Dr. WILLIAM READ AND OTHERS, COMP'LS. AND JOHN I. DEWS AND OTHERS, DEF'TS.

*In Equity. Motion to dissolve Injunction.*

The Judges of the Superior Courts of Georgia have the power in vacation, to dissolve an In-junction.

Under the rule of Court, which directs that all Injunctions shall be granted, " until further order," an Injunction may be dissolved before answer filed, on mere affidavit denying the equity of the Bill.

And an Injunction will be dissolved on motion, when it appears to have been improvidently granted.

An Injunction will be granted, if the bill shews a *probable* right, and a probable danger to such right without the special interposition of the Court.

Where it appears that the defendants have an established and legal right, which might be de-layed and hindered unnecessarily, by retaining an Injunction absolutely, it may be dissolved *conditionally*, and on terms which will protect both parties.

Where a bill was filed, merely for the purpose of obtaining Injunction, and after it was granted other persons really and beneficially interested in the judgment at law enjoined, applied to be made defendants, the Court compelled the complainants (on pain of dissolution of the Injunc-tion if they refused,) to amend their bill, by making the applicants defendants and parties, without prejudice to the Injunction.

### By LAW, Judge.

THIS case comes before me, now, upon a motion to dissolve the injunction heretofore granted, restraining the Sheriff *John I. Dews* from paying over the sum of fifteen thousand dollars, raised upon judgments in favor of the other defendants in the bill against the estate of the late Gen. *Jacob Read.* The motion is made by *William Whiteman* and *Benjamin F. Hunt*, who, by affidavit, represent themselves to the Court as assignees of the judgments upon which the money was raised. That this opinion may be intelligible, it is necessary briefly to advert to the allegations of complainant's bill. (Omitted here, see them stated in the foregoing opinion.)

The present motion to dissolve the injunction is founded.

1. Upon facts disclosed by affidavit on the part of *Whiteman* and *Hunt.*

2. Because they say, in effect, that the injunction was improvidently granted, there being no equity in the complainants' bill, which should entitle them to this special interposition.

Various objections to the motion, not founded upon the merits, have been urged by the complainants' counsel, which require to be considered and disposed of.   And first, it is denied that the Judge of the Superior Courts possesses the power to dissolve an injunction in vacation.   In support of this objection, we are referred to the practice of the Court, which it is contended, has never been to dissolve out of term time.   Mr. *Eden* lays it down in his treatise on injunctions, that a motion to dissolve must be made in open Court; and so in New York, it is stated in *Blake's* Chancery. But the Chancery is always considered open for these purposes, and it would be hard and productive of great inconvenience, that whilst the Judge of the Superior Court might grant the injunction in vacation, he could not dissolve it till term time.   In the absence of Reports, and a controlling tribunal over the changing opinions of the successive individuals, by whom the laws are administered, it is difficult satisfactorily to ascertain a settled practice in our Courts. But in truth, no adjudication upon this point is relied on or pretended, and the argument, at most, is simply that such a motion is not recollected to have been made in vacation.   Apart from the uncertainty in which the fact is involved, as to what the practice has been, if it were conceded, it ought not, I think, to be permitted so to operate, as to deny the exercise of a power strongly called for by considerations of justice and convenience.   Take the case of an injunction, granted in the first instance from the pressing necessity of the case for relief, upon the equity apparent in the bill; but upon the coming in of the answer, the whole of that equity is denied; the ground upon which the writ was granted, and on which alone it could rest, is thus withdrawn, and according

to the authorities, the writ goes with it, and the dissolution is but a matter in course; unless there are circumstances in the nature of the case, addressing the discretion of the Court, which require its continuance, it would be manifestly a practice at variance with justice, that the party should be hung up till the meeting of the Court in such a case. When it is considered too, that the injunction is but in the nature of an interlocutory order, and in the first instance not necessarily granted by the Court, but by a Judge at Chambers; that the granting or continuing this writ, is but the exercise of a discretionary power to be regulated by the justice and circumstances of the case, I should be inclined to hold that the authority which imposed the clog, might remove it, unless the power were denied more plainly than by an inference deduced from a practice, heretofore acquiesced in.

These remarks are also deemed worthy of consideration in constructing the 7th Sec. of the Act of 1811, which has also been relied on as denying the exercise of this power anterior to the first term of the Court. In the view which I take of this section, instead of acting as a prohibition upon the Judges to dissolve an injunction anterior to the first term after it was granted, it seems to fix that as a period, when it shall be the right of the party to be heard in course; a right of which he shall not be deprived by the terms of the order. The object of this section of the Act is obviously rather to facilitate than delay; to avoid hanging the party up till the second term, when the bill would be ripe for hearing and argument upon the merits. This construction is in accordance with other sections of the same act, which negative the idea of delay, and with those views of convenience and justice, which have been just given.

The next objection presented by the complainants affirms, that the injunction is never dissolved till the coming in of the answer. This, I apprehend, depends very much upon the nature of the order. By the English practice the usual order was till answer *and*

further order.   By the more modern practice in England, as esta-
blished since Lord *Eldon's* time, this form of granting injunction
has been modified till answer *or* further order.   When the injunc-
tion is granted till answer *and* further order, it is never dissolved
till the answer comes in.   But where it is till answer *or* further
order, it allows the defendant to move its dissolution before fil-
ing the answer, upon an affidavit denying the equity of the bill.
This difference in the manner of granting injunctions distinguish-
ed the common injunction to stay execution, and the special in-
junction, which under peculiar circumstances, stopped the proceed-
ings at some anterior stage.   The special injunction always being,
till answer *or* order and which has always been held liable to a mo-
tion to dissolve upon affidavit.   The rule of Court under which we
practice, as established by the Judges in convention requires that
all injunctions be granted till further order, and in compliance with
this rule, was the order in this case.   In the case of *Read* vs. *Con-
sequa*, (4 Wash. C. C. Rep. 174,) Judge *Washington* says, that the
motion to dissolve without answer filed, is altogether unprecedent-
ed.   The uniform practice in that Court, he says, has been to re-
quire an answer.   Yet, he remarks, that the Court might under
particular circumstances, grant the injunction until answer *or* fur-
ther order, and in that case, listen to a motion to dissolve upon an
affidavit of the defendant denying the equity of the bill.   Upon the
distinctions which have been made in the English practice, and the
manner of granting injunctions under our rule of Court, aided by
the consideration that the answer in this case is not important to
the complainants, nothing being sought to be discovered from the
defendants for the purpose of supporting the bill, I think I am
bound to listen to this motion, although the answer has not been
filed.   This would naturally lead us to the affidavit which has been
filed, but I postpone its consideration for a moment, to advert to
an objection, made to the second ground upon which the motion is
made, viz. it is said that the Court having already heard argument

PART II.—U. 2.

upon the rule to shew cause, against the original motion to grant
the injunction, and having thus virtually decided upon the equity
of the bill before the injunction was granted, will not now enter-
tain this motion upon the ground of a want of equity in the bill.
Applications for injunctions are frequently made at the last moment,
when from the pressing necessity of the case, the Court is obliged
to act immediately.   Cases occur therefore, which afford no oppor-
tunity either to the counsel or the Court, for that reflection and ex-
amination, which might consist with the advancement of justice;
and although an argument was heard in this case upon the rule to
shew cause, the notice was necessarily too short to admit of care-
ful preparation.   It does not seem to me, that there is any good
reason why the Court should not allow the defendant to go into the
question of a want of equity in the bill, for if it can be made to ap-
pear that the Court has improvidently issued the writ, it ought to
be discharged.   It is true, that the question whether the bill pre-
sented a case for the equitable jurisdiction of the Court, might be
brought up by plea or demurrer; but as the bill prays no ultimate
relief, and seeks no final decree, but its whole object is confined to
the injunction, I do not see why the defendant should not be al-
lowed to present it upon this motion.   In the case of *Minturn* vs.
*Seymour*, 4 John. Ch. Rep. 173, the motion was to dissolve the
injunction, although the defendant had not answered, on the ground
of a want of equity in the bill.   The injunction had been allowed
by the Chancellor.   It was objected to the motion, that the defend-
ant had not answered, and it was insisted, that except in cases where
the injunction had been allowed by a master, the defendant is not
entitled to move to dissolve before he has answered.   The Chan-
cellor overruled the objection.   It was replied to this case, that
according to the New York practice, the injunction is allowed
without argument in the first instance.   But with us, although it is
usual to grant a rule to shew cause, yet the argument is often so
hurried, as to render more deliberate investigation desirable.   In
the case of *James'* adm'or. vs *Jefferson*, 4 Hen. & Munfd. 483,

the motion was to discharge the injunction as improvidently granted. The Chancellor said, " I had very great doubts at first about granting the injunction, but as the defendant is *in contempt*, the bill having been taken for confessed after injunction granted for want of answer, the motion comes from him with rather a bad grace."

I proceed now to consider the ground upon which this motion rests. The affidavit which has been filed, simply brings to the notice of the Court the interest of *Whiteman* and *Hunt*, as assignees of the judgments, and represents the claim of the complainants as one of long standing, over which they have slumbered and delayed for a great length of time, whilst the defendant's claim is stated to be one, founded on recent contract, for valuable consideration, without notice, and reduced to judgments. These are the principal facts stated in the affidavit. The general denial of equity of the bill founded upon the ignorance of the defendant as to the facts stated in the bill, can have no effect whatever. The equity of the bill is founded in a right derived from an alleged lien, growing out of the deed of trust and the Act of 1799. This basis upon which the complainants' claim rests, is not removed by the affidavit. Whatever effect may be given to the neglect and delay of the plaintiffs in enforcing their claim at an earlier period, on a final decree upon the merits, I am not disposed, under the circumstances of the case as disclosed by the bill, to consider it as authorizing the dissolution of the injunction. The general principle to be collected from the books is, that a person applying for an injunction, must shew an actual or probable right to the estate. This doctrine gathered from works on Chancery jurisdiction, was most explicitly stated in the case of *Georgia* vs. *Brailsford*, (2 Dall. 402, 415,) where Judge *Johnson* says : " In order to support a motion for an injunction, the bill should set forth a case of probable right, and a probable danger that the right would be defeated, without this special interposition of the Court." Judge *Iredell* says : " It is too

early upon a motion for injunction to express an opinion upon the title in collision; it is enough on a motion of this kind to shew a colourable title." In a case in South Carolina, *Wilson* vs. *Wilson*, (1 Dess. Rep. 224,) the Court said it would not give any opinion upon the merits of the case, that whether the bond could be supported or should be defeated by the defeazance, must remain to be decided when the whole merits should be gone into. But that there did appear upon the face of the bond a right in the complainant, and that to give an opportunity to go into the whole merits, it was necessary to grant an injunction to prevent in the mean time any disposition of the property.

It is said in *Dick.* 149, that a party applying for injunction must shew a specific right in the property, and that it is in danger.

In the case of *Birch* vs. *Corbijer*, (1 Brown, Ch. Rep. 571,) the plaintiff filed a bill claiming an equitable lien on stock. The Bank hearing of suit refused to permit a transfer. It was moved that the Bank might be ordered to transfer. The Lord Chancellor said, this was in fact requiring a decree in the cause, by an interlocutory order, for the defendant must undertake to prove that the complainant has no lien on the stock.

The simple inquiry in this case is, whether it appears from the allegations of the bill, that the complainants have a probable right, and that this right is in danger of being defeated unless the Court interposes.

The complainants, as has already been stated, contend for a lien upon specific property under the deed of trust and also by virtue of the Act of 1799. It is insisted by the defendant, that the deed is not a conveyance in trust from *James Read* to Gen. *Read*, but that it is an absolute conveyance with a confidence reposed, which does not entitle the plaintiffs to any lien; and they further say that if the Act of 1799 has any application to this case, it merely secures a priority in payment, but gives no lien. It is not my in-

tention to express any opinion upon these points and many others raised in argument against the merits of complainants' claim, but believing, as I do, that the complainants have presented "a fair foundation for future judicial investigation," that they have exhibited a colourable right upon which they may obtain a decree, that will entitle them to be paid in preference to the present judgment creditors, when the whole merits are gone into, upon plenary hearing, it only remains to inquire, whether that right is in danger of being defeated, unless this Court interposes.

If the money now detained in the hands of the Sheriff, be permitted to be drawn out by dissolving the injunction absolutely, how will the complainants enforce their decree, should they succeed in establishing their lien? It was argued for the defendants, that if the plaintiffs had a lien, it would follow the property into whatever hands it might go ; and as the land could not be eloigned, the plaintiffs needed no assistance. I have looked carefully to this suggestion, and after giving to it the best reflection of which I am capable, I cannot acquiesce in the propriety of leaving the complainants to the chance of reaching this property in the hands of third persons. Besides they may succeed in establishing a lien under the trust deed, upon the specific property, which consists of negroes and fail under the Act of 1799. The motion to dissolve the injunction absolutely, is therefore *overruled.*

Whilst the jurisdiction of the Court as to injunction, is a most useful one, without which the benefit of an equity against proceedings at law could not be had, it is necessary to be extremely careful, that this power be not used to delay justice and unnecessarily to hinder the enjoyment of a *legal* right. The sum of money now detained in the Sheriff's hands is large, and the annual interest upon it considerable. Although it be true that the Court would dissolve the injunction unless the complainants used every diligence in their power to speed their cause in the Circuit Court, yet the money is detained indefinitely, and it may be necessary,

notwithstanding the best exertions of the complainants, to retain it for some time. The defendants represent themselves as judgment creditors, and consequently as having an established and *legal* right. All that the plaintiffs can ask for, is that the Court should so far interpose, as to enable them ultimately to enforce their decree should they succeed in establishing their lien. That the defendants should not be unnecessarily hindered in the enjoyment of a right which they have established at law ; that this large sum of money might not be held in a situation wholly unproductive and for an indefinite term, and at the same time, that the plaintiffs may be protected in any right which they may succeed in establishing, I have come to the conclusion to dissolve the injunction conditionally; and the condition is, that the defendants *Whiteman & Hunt*, who are understood to be highly responsible individuals, and purchasers of the property of Gen. Read, do give a bond with good and sufficient securities to be judged of by this Court, payable to the complainants in the sum of $17,000 conditioned for the forthcoming of the property to answer such decree as the plaintiffs may obtain, and for the payment of which they shall be decreed to have a lien upon the specific property, under the trust deed, or upon the gen'ral estate of Gen. Read, under the Act of 1799; and upon failure to produce the property, then conditioned to pay to complainants the amount of their decree so established. In order to this, it is necessary that the defendants, *Whiteman & Hunt*, be made parties to this bill ; and in this there is some difficulty.

They represent themselves by their affidavit, as assignees of the judgments, and as willing to be made parties, and move to be made defendants in the bill. This is not a regular motion. But as it is a case simply of injunction, and the motion is made to a Court of equity by those really and beneficially interested in the judgment at law, the Court will compel the plaintiffs to amend their bill by making *Whiteman & Hunt* defendants, without prejudice to the injunction, as it now stands by the amendment, and upon their re-

fusal to do so will dissolve the injunction. This course was adopted in the case of *Harrison* vs. *Morton*, (4 Hen. & Munfd. 483.)

Should these defendants thus made parties to the bill decline to give the security required, in which case the injunction will stand continued, they will be entitled to the benefit of the bond which was ordered to be given by the complainants upon granting the injunction. To this end, a new bond must be executed by the complainants, payable to these defendants in a like sum and conditioned as the former bond.

HABERSHAM & OWENS, for complainants—B. F. HUNT, NICOLL & GORDON, for defendants.